UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NEVADA WALKER**

**Plaintiff,**

                                                  **CIVIL ACTION**
                                                  **FILE NO.8:14-cv-00588**

**v.**

**TRANSWORLD SYSTEMS, INC**

                   **Defendant.**

_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff NEVADA WALKER by and through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby files Plaintiff's Motion for Summary Judgment, and as grounds therefore states as follows:

**MEMORANDUM OF LAW**

**Introduction and Summary:**

This is an action claiming unlawful debt collection.  It arises out of a series of telephone calls between Plaintiff and various employees of Defendant Transworld Systems, Inc.  Plaintiff contends that, by the mode and manner in which Plaintiff was called by Defendant that Defendant  violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq.* and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692

1

*et seq.* The TCPA, 47 U.S.C. §§ 227(b)(1)(iii), prohibits calls to cellular telephones by an Automatic Telephone Dialing System ("ATDS"), commonly referred to as a robo-dialer, without the prior express consent of the called party.

Summary Judgment in appropriate in this present action because the material undisputed facts show that:

1) Defendant called Plaintiff's cellular telephone 77 times;

2) Defendant used the "Livevox" system a known ATDS and predictive dialer to make the calls;

3) Defendant lacked Plaintiff's consent to make the complained of calls to Plaintiff's cell phones and further, Defendant acquired the Plaintiff's cell phone number through an unverified source, without any evidence of consent nor even a good faith basis to believe that consent ever existed and

4) Plaintiff not only refused to consent to the complained of calls, but also specifically told Defendant to stop calling Plaintiff's cell phone from the inception of Defendant's auto-dialing campaign against Plaintiff.

As set forth more fully below, Plaintiff respectfully submits that the undisputed material facts of this matter establish that Plaintiff is entitled to judgment as a matter of law and that summary judgment should be granted in their favor and judgment entered against Defendant as to liability as the facts demonstrate that Defendant called Plaintiff's cell phone with an automated telephone dialing system, repeatedly, without express consent and kept calling Plaintiff's cell phone even after being specifically instructed to stop making the unwanted calls.

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to Interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fennell v Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009). To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

In considering a motion for summary judgment, the Court must view all facts and inferences to be drawn there from in the light most favorable to the non-moving party. Abel v. S. Shuttle Servs., Inc., 620 F.3d 1272, 1273 n.1 (11th Cir. 2010); Matshushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985).

Once the moving party has met the burden of showing that no genuine issue of material fact exists, the non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Porter v. Ray, 401 F.3d 1315, 1320 (11th Cir. 2006) (non-moving party must go beyond pleadings); Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (moving party discharges burden by showing absence of evidence to

support non-moving party's case); <u>Evers v. Gen. Motors Corp.</u>, 770 F2d 984, 986 (11th Cir. 1985)(conclusory allegations without specific supporting facts have no probative value).

Not every factual dispute between the parties will prevent summary judgment; the disputed facts must be material; they must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. <u>First Nat' l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

## I.      Telephone Consumer Protection Act

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." <u>Gager v. Dell Fin. Servs., LLC</u>, 727 F.3d 265, 268 (3d Cir. 2013) (citing <u>Mims v. Arrow Fin. Servs., LLC,</u> 132 S.Ct. 740, 745 (2012)). The TCPA, in relevant part, makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C., § 227(b)(1)(A). "The TCPA is essentially a strict liability statute" and "does not require any intent for liability except when awarding treble damages." <u>Alea London Ltd. v. Am. Home Servs., Inc.,</u> 638 F.3d 768, 776 (11th Cir. 2011). The statute of

limitations for a TCPA claim is four years with the date of the claim arising on the date of the last call made to Plaintiff's cell phone number. [1]

## A. <u>Standing</u>

Defendant raises multiple affirmative defenses that lack foundation in either fact or law.  One threshold issue that Defendant raises is whether Plaintiff even has standing to complain of a TCPA violation.   Defendant asserts that Plaintiff was not the "intended recipient" of the calls and not charged for the calls.  The term "intended recipient," however, appears nowhere in § 227.  Instead, the statute refers to "any person or entity" or the "called party," which Plaintiff undoubtedly is and was.  <u>See</u> <u>Soppet v. Enhanced Recovery Co., LLC</u>, 679 F.3d 637, 643 (7th Cir. 2012) (concluding that "called party" means "the person subscribing to the called number at the time the call is made" and rejecting argument that it means "intended recipient"); <u>Harris v. World Fin. Network Nat. Bank,</u> 867 F. Supp. 2d 888, 894-95 (E.D. Mich. 2012<u>); Swope v. Credit Mgmt., LP,</u> 2013 WL 607830, at *2-3 (E.D. Mo. Feb. 19, 2013).

Further, the Eleventh Circuit has determined that a defendant violates 47 U.S.C. § 227(b)(1)(A)(iii) by autodialing a cellular telephone service regardless if the called party is charged for the call.  <u>See Osorio v. State Farm Bank, F.S.B.,</u> 746 F.3d 1242 (11th Cir. 2014).  The TCPA always prohibits autodialed calls to cellular phones, even business phones.  <u>See De Los Santos v. Millward Brown, Inc.,</u> 13-80670- cv-MARRA, *12-13

---

[1] **The general four-year statute of limitation for federal claims applies to TCPA claims under either sections 227(b) or (c).**  28 U.S.C §1658: *see Benedia v. Super Fair Cellular, Inc.,* 2007 WL 2903175 (N.D. Ill. Sept. 26, 2007);

(S.D. Fla. June 29, 2014).    Accordingly, Plaintiff was the subscriber of the cell phone

number ending in 1721 at the time Defendant made the calls at issue in this case and has

standing to sue.


   **B.  <u>Defendant's Use Of An Automated Telephone Dialing System</u>**

      Defendant's discovery responses and testimony makes it clear that Defendant used an

automated telephone dialing system and/or predictive dialer ) ("ATDS")  to make the offending

calls to Plaintiff's cell phone.[2]   During the relevant time period, Defendant utilized a telephone

system operated by LiveVox in order to place many, if not all, of its telephone calls.  Indeed, the

undisputed evidence at bar demonstrates mightily that Defendant's telephone predictive dialing

system known as "Livevox" has the capacity to store numbers.

      At least two other district courts, examining the exact same LiveVox system as utilized

by the Defendant, came to the conclusion that it met the statutory definition of an ATDS.  *See*

<u>Echevvaria v. Diversified Consultants, Inc</u>., 2014 WL 929275, at *5-7' and <u>Davis v. Diversified</u>

<u>Consultants, Inc</u>., 13-10875-FDS (D. Mass.  June 27, 2014).

      In <u>Davis,</u> the court did not give any merit to Defendant's statements that the LiveVox

system did not have the capacity to produce or store telephone numbers using a random or

sequential number generation.   <u>Id.</u>

       The FCC has interpreted an ATDS as "cover[ing] any equipment that has the specified

capacity to generate numbers and dial them without human intervention, regardless of whether

---

[2] The statute defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a) (emphasis added). To satisfy that definition, the equipment does not actually have to store or produce telephone numbers or to use a random or sequential number generator; it merely must have the capacity to do so. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. 2009).

the numbers called are randomly or sequentially generated or come from calling lists." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, 14092 (2003) ("2003 TCPA Order") (emphasis added). A predictive dialer is considered an ATDS under the TCPA. *Id.* at 14093. "A predictive dialer is...hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers... from a database of numbers." *Id.* at 14091. The FCC states that "the basic function of such equipment ... [is] the capacity to dial numbers without human intervention." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559, 566 (2008). See also, Jones v. FMA Alliance Ltd., 2013 WL 5719515, *1, n. 9 (D. Mass. Oct. 17, 2013) ("The FCC determined that 'equipment that dials a list of numbers (such as a business's list of customers), rather than dials random or sequential numbers, is still an ATDS, because 'the basic function of such dialing equipment' is the same—'the capacity to dial numbers without human intervention.' ") (citation omitted); Echevvaria 2014 WL 929275 at *4-5; Sherman v. Yahoo! Inc., 2014 WL 369384, *5-6 (S.D. Cal., Feb. 3, 2014).

And even if the Defendant or LiveVox attest to the fact that the LiveVox system cannot dial randomly or sequentially, it is undisputed that LiveVox is a "predictive dialer" that dials from lists of numbers. The FCC rulings specifically account for the fact that technology has developed such that lists of numbers are more cost-effective than random or sequential numbers. The agency concluded that a "predictive dialer" that relies on lists of numbers qualifies as an ATDS under the TCPA. That ruling is entitled to deference. See Leyse v. Clear Channel Broadcasting, Inc., 2013 WL 5926700, at *8 (6th Cir. Nov. 5, 2013) (granting Chevron

deference to FCC regulations under (granting <u>Chevron</u> deference to FCC regulations under the TCPA); *cf.* <u>United States v. Mead Corp.,</u> 533 U.S. 218, 226-27, 229-30 (2001).

Any of Defendant's self-serving assertions that it happened by chance on this one specific account to manually dial the calls should be disregarded and treated as hearsay evidence.   The Defendant fails to keep any documents, records or recordings that would lead a reasonable person to believe that they did not use their LiveVox system when they made all of the calls to Plaintiff's cell phone.   Defendant clearly had the present capacity to dial the calls that it made to Plaintiff's cell phone with an ATDS at the time that it made the calls.   It is Defendant's burden to prove otherwise.

In short, the LiveVox system, as utilized by the Defendant when it called Plaintiff's cell phone number ending in 1721 was an ATDS.


**C.**   <u>**Lack of Consent to Call Plaintiff's Cell Phone**</u>

The FCC has "conclude[d] that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." <u>Id</u>. at 564. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." <u>Id</u>. At 564-65. The Commission concluded that "the burden will be on the creditor to show it obtained the necessary prior express consent" because "creditors are in the best position to have records kept in the usual course of business showing such consent." <u>Id</u>. at 565.[3]

In the recently decided Eleventh Circuit case, <u>Mais v. Gulf Coast Collection Bureau, Inc.,</u> the Court determined that " (w)hen it comes to expectations for receiving calls, we see no evidence that the FCC drew a meaningful distinction between retail purchasers who complete credit applications and medical patients who fill out admissions forms like the Hospital's.  A patient filling out a form from a healthcare provider may very well expect to be contacted about his health and treatment.  *But if the form explicitly states that the provided information will be used for payment and billing, the patient has the same reason to expect collection calls as a retail consumer.*" <u>Mais v. Gulf Coast Collection Bureau, Inc.,</u> No. 13-14008,*25 (11th Cir. Sep. 29, 2014)<u>. [Emphasis].</u>

The Eleventh Circuit was very deliberate and precise in its ruling on the issue of consent to call a patient's cell phone such that the language in the hospital admission form referred to payment and billing.  In fact, in the instant case, any documentation that the Defendant has produced or asserts that it relied on to meet its burden that it had consent to call the Plaintiff's cell phone notably does not contain any of the *Mais* language regarding payment, billing, credit, the transaction, procedure or even the name of the alleged medical provider.

Upon further examination of the word consent in the legal context, Black's Law Dictionary defines "express consent" as "[c]onsent that is clearly and unmistakably stated" as opposed to "implied consent" which is "[c]onsent inferred from one's conduct rather than from one's direct expression".  346 (9th ed. 2004).  And, under common law, "[c]onsent is a willingness in fact for conduct to occur," <u>Restatement (Second) of Torts</u> § 892,  and "consent is terminated when  the actor knows  or has reason to know  that the other is no  longer  willing for him  to continue the particular conduct."  Id. § 892A, cmt. i. "This unwillingness may be manifested to the actor by any words or conduct inconsistent with continued consent. . . ."  <u>Id</u>.

9

See also Restatement (Second) of Torts § 171(b) (under traditional trespass theory, "actor's privilege to enter land created by consent of the possessor is terminated by . . . a revocation of the possessor's consent, of which the actor knows  or has reason to know").

It is a well-established rule of statutory interpretation that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." Neder v. United States, 527  U.S. 1, 21 (1999). See also Microsoft Corp.  v. i4i Ltd. Partnership, 131 S. Ct. 2238, 2246 (2011) ("[G]eneral rule [is] that a common-law term comes  with its common-law meaning.").  Additionally, "where Congress borrows terms of art in which  are accumulated the legal tradition and  meaning of centuries of practice," it is also presumed that Congress "knows  and  adopts the cluster of ideas  that were attached to each borrowed word  in the body  of learning from  which  it was taken …unless  otherwise instructed." Morissette v. United States, 342  U.S. 246,  263  (1952). See also Astoria Federal Savings & Loan Ass'n v. Solimino, 501  U.S. 104,  108  (1991) (common law  principles apply to statutory interpretation "except when  a statutory purpose to the contrary is evident") (citation omitted).

The plain language of the TCPA clearly requires "express consent".  (See, Section 227 (a)(3&4)).  Moreover, In the Mais case, the Court also determined that under the Hobbs Act, federal courts of appeals have exclusive jurisdiction to enjoin, set aside or determine the validity of FCC orders.   The FCC has provided guidance on the issue of consent to the courts on several occasions. And, in Talk America, Inc. v. Michigan Bell Telephone Co., 131 S. Ct. 2254 (2011), the Supreme Court ruled that agency interpretations in amicus briefs are entitled to deference.

10

The FCC provided an amicus brief to the Second Circuit Court of Appeals on the issue of consent in the debt collection context in the case of <u>Albert A. Nigro v. Mercantile Adjustment Bureau, LLC</u>, no. 13-1362 (2d Cir.).  In its brief the FCC stated that, based on the facts of the case, the plaintiff did not consent to the autodialed debt collection calls because he did not provide his cell phone number during the transaction that resulted in the debt owed. Citing a prior FCC order, the commission stated: "[p]rior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." See Declaratory Ruling, 23 FCC Rcd 599, 564-65, ¶ 10 (2008).  Further, was [a]n individual's consent, once obtained, is "not unlimited." <u>Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling,</u> 27.  FCC Rcd 15391, 15397  (¶11) (2012). The burden to establish consent lies with the calling party. <u>Richard Gilmore d/b/a Democratic Dialing, Citation and Order Prerecorded Message Violations,</u> 28 FCC Rcd 1831, 1834 (¶ 7) (2013). See ACA Order, 23 FCC Rcd at 565 (¶10).

In the instant case, the burden is on the Defendant to prove that it had consent to call Plaintiff's cell phone. The Defendant has failed to produce any evidence in support of the fact that it had the consent to call the Plaintiff's cell phone during the calls it made using an auto-dialer and the discovery period has not been extended by the Court.

The proverbial bottom line is that Defendant has no proof of having Plaintiff's prior express consent before embarking on an automated telephonic harassment campaign directed at Plaintiff's cell phone and no reasonable jury could find in favor of Defendant under controlling legal principles when applied to the facts at bar.

**Conclusion**

For the foregoing reasons, the record supports undisputed issues of fact to

Grant Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

**/s/ Lisa Wilcox**

_____

Lisa R. Wilcox, Esquire
FBN: 697291

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed on **October 6, 2014**I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which Notice will be electronically mailed to Defendant's counsel.

**/s/ Lisa Wilcox**

By: _____

Lisa R. Wilcox, Esquire
FBN: 697291
Wilcox Law, P.A.
721 First Avenue North, Suite 100
St. Petersburg, Florida 33701
888-945-2695
lisa@wilcoxlawpa.com